# 24-

# United States Court of Appeals

*for the*

# Second Circuit

---

LEON BLACK,

*Petitioner,*

− v. −

JANE DOE,

*Respondent.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

## PETITION FOR PERMISSION TO APPEAL AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1292(b)

---

E. Danya Perry
Peter A. Gwynne
PERRY LAW
445 Park Avenue, 7th Fl.
New York, NY 10028
(212) 393-4250

Michael B. Carlinsky
Jennifer J. Barrett
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Fl.
New York, NY 10010
(212) 849-7000

Susan Estrich (*pro hac vice forthcoming*)
ESTRICH GOLDIN LLP
947 Berkeley Street
Santa Monica, CA 90403
(213) 399-2132

*Attorneys for Petitioner*

November 18, 2024

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................. 1

QUESTION PRESENTED FOR REVIEW ................................. 3

STATEMENT OF THE RELEVANT FACTS AND BACKGROUND .................. 3

    A.    The Relevant Statutes ............................................... 3

        1.    New York City's VGMVPL ...................................... 3

        2.    New York State's CVA ........................................ 4

        3.    New York City's Revival Statute ............................. 5

    B.    Procedural History ................................................ 6

RELIEF SOUGHT .................................................................. 8

THE CERTIFIED QUESTION SATISFIES THE CRITERIA FOR
INTERLOCUTORY REVIEW UNDER § 1292(B) ............................ 8

I.    THE DISTRICT COURT'S ORDER PRESENTS A CONTROLLING
QUESTION OF LAW .................................................... 9

II.    THERE IS SUBSTANTIAL GROUND FOR DISAGREEMENT
WITH THE DISTRICT COURT'S RULING ON THE QUESTION
PRESENTED ............................................................ 10

III.    INTERLOCUTORY APPEAL WOULD MATERIALLY ADVANCE
THE ULTIMATE TERMINATION OF THE LITIGATION ...................... 16

IV.    INTERLOCUTORY REVIEW IS CONSISTENT WITH THE
PURPOSE OF SECTION 1292(B) ........................................ 17

CONCLUSION .................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*Amadou v. Doyle*,
   674 F. App'x 50 (2d Cir. 2017) ...........................................................17

*Arizona v. United States*,
   567 U.S. 387 (2012)..........................................................................14

*Bellino v. Tallarico*,
   2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024) ..........................7, 11, 13

*Cantero v. Bank of Am., N.A.*,
   49 F.4th 121 (2d Cir. 2022...................................................................9

*Capitol Records, LLC v. Vimeo*,
   972 F. Supp. 2d 537 (S.D.N.Y. 2013) ................................................11

*Capitol Records, LLC v. Vimeo, LLC*,
   826 F.3d 78 (2d Cir. 2016) ................................................................11

*Casey v. Long Island R.R.*,
   406 F.3d 142 (2d Cir. 2005) ................................................................9

*Cohen v. Bd. of Appeals of Vill. of Saddle Rock*,
   100 N.Y.2d 395 (2003)......................................................................12

*Connell v. Hayden*,
   83 A.D.2d 30 (2d Dep't 1981)............................................................19

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000)..........................................................................14

*Drake v. Lab'y Corp. of Am. Holdings*,
   458 F.3d 48 (2d Cir. 2006) ..................................................................9

*In re Duplan Corp.*,
   591 F.2d 139 (2d Cir. 1978) ..............................................................16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Fenton v. State,*
    213 A.D.3d 737 (2d Dep't 2023) ....................................................4

*Gerosa v. Savasta & Co.,*
    329 F.3d 317 (2d Cir. 2003) .........................................................9

*Isra Fruit, Ltd. v. Agrexco Agric. Export Co.,*
    804 F.2d 24 (2d Cir. 1986) .........................................................16

*Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.,*
    96 F.4th 539 (2d Cir.), *certified question accepted*, 41 N.Y.3d 969
    (2024) ..............................................................................10, 18

*Kane v. Mount Pleasant Cent. Sch. Dist.,*
    80 F.4th 101 (2d Cir. 2023) .......................................................18

*Klinghoffer v. S.N.C Achille Lauro,*
    921 F.2d 21 (2d Cir. 1990) ................................................8, 10, 17

*Koehler v. Bank of Bermuda,*
    101 F.3d 863 (2d Cir. 1996) ..................................................16, 19

*Lansdown Ent. Corp. v. New York City Dep't of Consumer Affairs,*
    74 N.Y.2d 761 (1989) ..........................................................13, 14

*Marisol A. by Forbes v. Giuliani,*
    104 F.3d 524 (2d Cir. 1996) .......................................................19

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.,*
    849 F.2d 761 (2d Cir. 1988) .......................................................18

*Mei Xing Yu v. Hasaki Rest., Inc.,*
    874 F.3d 94 (2d Cir. 2017) .........................................................10

*Montefiore Med. Ctr. v. Teamsters Loc. 272,*
    642 F.3d 321 (2d Cir. 2011) .........................................................9

*N.Y. State Assn's for Affordable Hous. v. Council of the City of N.Y.,*
    141 A.D.3d 208 (1st Dep't 2016) ................................................13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*New York City Health & Hosps. Corp. v. Council of the City of N.Y. York*,
  303 A.D.2d 69 (1st Dep't 2003) ................................................ 15

*Oglesby v. Delaware & Hudson Ry. Co.*,
  180 F.3d 458 (2d Cir. 1999) (per curiam) ................................. 9

*Pac. Capital Bank, N.A. v. Connecticut*,
  542 F.3d 341 (2d Cir. 2008) .................................................... 9

*Patrolmen's Benev. Ass'n of City of New York, Inc. v. City of New York*, 142 A.D.3d 53 (1st Dep't 2016) ................................... 15

*People v. Torres*,
  37 N.Y.3d 256 (2021) ............................................................ 12

*Pettaway v. Nat'l Recovery Sols., LLC*,
  955 F.3d 299 (2d Cir. 2020) .................................................. 17

*Red Bull Assocs. v. Best Western Int'l*,
  862 F.2d 963 (2d Cir. 1988) .................................................. 16

*Stephens v. Am. Int'l Ins. Co.*,
  66 F.3d 41 (2d Cir. 1995) ...................................................... 10

*Sutton v. Tapscott*,
  2024 WL 4657123 (2d Cir. Nov. 4, 2024) .............................. 18

*Tantaros v. Fox News Network, LLC*,
  12 F.4th 135 (2d Cir. 2021) .................................................... 9

*United States v. Kubrick*,
  444 U.S. 111 (1979) .............................................................. 19

*United States v. Morrison*,
  529 U.S. 598 (2000) .............................................................. 3

### Statutes

28 U.S.C. § 1292(b) ..................................................... *passim*

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

New York State Penal Law § 130.................................................................5

N.Y. C.P.L.R. § 214-g...................................................................4, 13, 14

## <u>Regulations</u>

N.Y.C. Admin. Code § 10-1102 ..............................................................3

N.Y.C. Admin. Code § 10-1105 ........................................1, 3, 5, 6, 14

## <u>Rules</u>

Federal Rule of Appellate Procedure 5 .................................................8

## <u>Legislative Materials</u>

City of New York, L.L. 21/2022 § 2 .......................................................5

City of New York, L.L. 73/2000 § I .......................................................3

NY LEGIS 11 (2019), 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440) .................4

NY LEGIS 130 (2020), 2020 Sess. Law News of N.Y. Ch. 130 (S. 7082) ....................................................................................5

## <u>Other Authorities</u>

16 Edward H. Cooper, Federal Practice and Procedure, (Wright & Miller) § 3930 (3d ed. 2023)..............................................................16

## INTRODUCTION

In July 2023, Plaintiff-Respondent Jane Doe filed this suit based on a sexual assault that allegedly occurred more than 21 years ago: in 2002, when she was a 16-year-old minor. These allegations are a complete work of fiction and Defendant-Petitioner Leon Black categorically denies Ms. Doe's allegations, which have unfairly smeared his reputation. The basis of the decision below and this petition, however, is a purely legal question: whether Ms. Doe's claims are time-barred given that her only basis for asserting them now—a New York *City* extender statute—is preempted by applicable New York *State* law. The district court (Clarke, J.) denied Mr. Black's motion to dismiss but acknowledged that another judge in the district (Kaplan, J.) dismissed a legally indistinguishable claim on preemption and timeliness grounds. The district court accordingly certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). This Court should grant this petition to resolve the important question presented, which is controlling in this case and others—and has divided the two district courts that have considered it.

Ms. Doe filed her claim under New York City's Victims of Gender-Motivated Violence Protection Law ("VGMVPL"), which generally allows claims for sexual assault and other specified violations within seven years of the alleged violation or nine years after the plaintiff became an adult. N.Y.C. Admin. Code § 10-1105(a). It is undisputed that those deadlines ran more than decade ago for Ms. Doe. She

instead contends that her claim is timely under a recent New York City law allowing expired VGMVPL claims to be filed between March 2023 and March 2025 ("VGMVPL Revival Statute"). The problem with that position is that New York State has separately enacted a law reviving such claims for minor victims—the Child Victims Act ("CVA")—and limiting their filing to a period between August 2019 and August 2021. New York City is thus attempting to enforce a directly conflicting timetable for claims that New York State expressly addressed in the CVA. That effort is preempted under a straightforward application of New York law, as Judge Kaplan held in the first case presenting the question in the Southern District of New York. *Bellino v. Tallarico*, 2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024).

The court below reached a contrary conclusion but appropriately certified its decision under Section 1292(b), and the criteria for immediate appellate review are readily satisfied. The appeal presents a "controlling question of law" because the preemption issue is a purely legal question that is dispositive of Ms. Doe's action. There is "substantial ground for difference of opinion" because there are two conflicting district court decisions, and the question is of first impression in this Court. And immediate appeal would materially advance the ultimate termination of the litigation because the action would end if this Court reversed the district court's decision. Finally, immediate appeal is consistent with Section 1292(b)'s purpose of avoiding unnecessary litigation and promoting judicial efficiency, particularly

2

considering that the issue is likely to recur with frequency (and is already pending in another case before the court below).

## QUESTION PRESENTED FOR REVIEW

Whether, under New York law, New York City's VGMVPL revival provision is preempted by New York State's CVA revival provision.

## STATEMENT OF THE RELEVANT FACTS AND BACKGROUND

### A.     The Relevant Statutes

There are three relevant statutes at issue in this case: New York City's VGMVPL, New York State's CVA, and New York City's Revival Statute.

### 1.     New York City's VGMVPL

The New York City Council adopted the VGMVPL in 2000 in response to the U.S. Supreme Court's decision in *United States v. Morrison*, 529 U.S. 598 (2000), which struck down the federal Violence Against Women Act on Commerce Clause grounds. *See* City of New York, L.L. 73/2000 § I; N.Y.C. Admin. Code § 10-1102. The VGMVPL creates a civil cause of action for a "crime of violence motivated by gender." N.Y.C. Admin. Code § 10-1104.

As a general matter, a claim under the VGMVPL must "be commenced within seven years after the alleged crime of violence motivated by gender occurred." N.Y.C. Admin. Code § 10-1105(a). However, if a potential plaintiff is unable to bring an action at the time the crime of violence occurs for certain enumerated

reasons, "the time within which the action must be commenced shall be extended to nine years after the inability to commence the action ceases." *Id.* One of the enumerated reasons is "infancy" (*i.e.*, minor status). *Id.* A VGMVPL plaintiff whose claim arose when the plaintiff was a minor thus has nine years to bring the claim after becoming an adult. *Id.*

### 2. New York State's CVA

New York state also has a statutory scheme covering sexual assaults against minors. In 2019, the New York State Legislature enacted the CVA. NY LEGIS 11 (2019), 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440). The CVA comprehensively reformed New York's laws related to sexual offenses committed against minors in both criminal and civil contexts. *Id.* In particular, it dramatically extended numerous statutes of limitations for child victims of sexual assault. *See Fenton v. State*, 213 A.D.3d 737, 740 (2d Dep't 2023) ("The legislative purpose of the CVA is to remedy the injustices to survivors of child sexual abuse by extending New York's restrictive statutes of limitations.") (internal quotations omitted).

The CVA provision relevant here revives civil claims for specifically defined forms of sexual assault against minors for which the applicable limitations period has already expired. N.Y. C.P.L.R. § 214-g. The CVA Revival Provision begins by stating that it applies "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary." *Id.* It then describes its coverage: "every civil

claim ... brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in"—among other provisions—"article one hundred thirty of the" New York State Penal Law, which was "committed against" a minor and was "barred as of" February 14, 2019 because "the applicable period of limitation has expired." *Id.* The CVA Revival Provision provides that such claims are "hereby revived, and action thereon may be commenced" between August 14, 2019, and August 14, 2020. *Id.* On August 3, 2020, the New York State Legislature extended the CVA's revival window period for another year, until August 14, 2021. NY LEGIS 130 (2020), 2020 Sess. Law News of N.Y. Ch. 130 (S. 7082).

### 3. New York City's Revival Statute

On January 9, 2022, the New York City Council also adopted a revival provision, amending the VGMVPL and stating that "any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022." City of New York, L.L. 21/2022 § 2; N.Y.C. Admin. Code § 10-1105(a). The revival period accordingly lasts for two years, beginning on March 1, 2023, and concluding on March 1, 2025—all after the CVA's revival period has expired.

### B.    Procedural History

In July 2023, Ms. Doe filed a complaint based on a sexual assault that allegedly occurred more than 21 years ago: in 2002, when she was a 16-year-old minor.  Dist. Ct. Dkt. 1 at ¶¶1-2, 60.  She brought the claim under the VGMVPL and alleged that her claim was timely under the VGMVPL Revival Statute because it was commenced within the two-year window extending from March 2023 to March 2025, or "two years and six months after September 1, 2022."  *Id.* at ¶¶95-99 (citing N.Y.C. Admin. Code § 10-1105(a)).

Setting aside the fact that the allegations are categorically baseless,[1] Mr. Black moved to dismiss the complaint as untimely under Federal Rule of Civil Procedure 12(b)(6).  Dist. Ct. Dkt. 40, 41.  Mr. Black argued that Ms. Doe's claim was barred by the VGMVPL's statute of limitations because it was not commenced within seven years of the alleged assault or within the alternative nine-year period established by that law.  Dist. Ct. Dkt. 41 at 9.  The VGMVPL Revival Statute did not render Ms. Doe's claims timely because that statute was preempted by New York State's CVA Revival Provision, which sets an exclusive, earlier revival window for sexual-assault claims against minors.  *Id.* at 9-13.  Mr. Black argued that the VGMVPL Revival Statute was preempted under both field and conflict preemption.  *Id.* at 14-20.

---

[1]    Professional investigators engaged by Mr. Black's attorneys have already uncovered significant evidence that Ms. Doe is making these allegations up.

Because Ms. Doe failed to file her complaint within New York State's CVA Revival Provision's window (between August 2019 and August 2021), her claim was time-barred. *Id.* at 20-21.

The district court denied Mr. Black's motion to dismiss. Ex. 1. ("MTD Or."). The district court held that the VGMVPL Revival Statute was not field preempted because the state had not made statements "evincing a desire to fully control the issue of statutes of limitation in child sexual offense cases," and the New York State's CVA was not a comprehensive and detailed scheme. *Id.* at 6-11. The district court also held conflict preemption did not apply because the VGMVPL Revival Statute did not curtail or take away a right or benefit expressly given by the state and both statutes further the same goals. *Id.* at 11-13. In the order, the district court acknowledged that another decision in the Southern District of New York reached the opposite conclusion; in *Bellino v. Tallarico*, 2024 WL 1344075, (S.D.N.Y. Feb. 21, 2024), that court held that "the limitations provision of the [VGMVPL] is preempted by the state's adoption of the Child Victims Act and the Adult Survivors Act." *Id.* at 13.

Mr. Black moved to certify the district court's order for interlocutory review pursuant to 28 U.S.C. § 1292(b). Dist. Ct. Dkt. 122. On November 8, 2024, the district court entered an order granting Mr. Black's certification motion. *See* Ex. 2 ("Certification Or."). That same day, in the same written order, the district court

granted Ms. Doe's motion for leave to amend. *Id.* On November 7, 2024, after a conference during which the district court stated on the record that it intended to grant Ms. Doe's motion for leave to amend, Ms. Doe filed an amended complaint, in which she again asserted only one cause of action for violation of the VGMVPL arising out of the single alleged encounter in 2002, and again relied on the VGMVPL Revival Statute as the basis for asserting a timely claim. *See* Dist. Ct. Dkt. 152.

## RELIEF SOUGHT

This Court should grant permission to appeal from the Order below under 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5.

## THE CERTIFIED QUESTION SATISFIES THE CRITERIA FOR INTERLOCUTORY REVIEW UNDER § 1292(B)

Immediate appeal of an interlocutory order is appropriate under 28 U.S.C. § 1292(b) when (1) the order "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All three statutory criteria are met here. The district court properly certified the order for interlocutory review and this Court should exercise it discretion to hear the appeal. Interlocutory appeal of the threshold preemption question could terminate the litigation and avoid unnecessary litigation, making this precisely the sort of case for which Section 1292(b) was designed.

8

## I.   THE DISTRICT COURT'S ORDER PRESENTS A CONTROLLING QUESTION OF LAW

It is indisputable that the issue here—whether the VGMVPL is preempted by the CVA—raises a controlling question of law.  While an issue on appeal may be controlling even when it does not terminate the action, "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).  A ruling reversing the district court in favor of Mr. Black on this threshold question would fully dispose of Ms. Doe's claim, terminating the litigation.

Whether preemption applies is a pure question of law to be reviewed de novo. *See Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008) ("A district court's determination as to preemption is a conclusion of law, which we review de novo."); *cf. Casey v. Long Island R.R.*, 406 F.3d 142, 146-47 (2d Cir. 2005) (denying petition for leave to appeal when the issue was not a question of law to be reviewed de novo).  Resolving the preemption issue here does not require extensive review of the factual record.  *Cf. Casey*, 406 F.3d at 146-47 (issue requiring evaluation of trial evidence was not a question of law).

This Court has frequently granted interlocutory review of preemption questions.  *See Cantero v. Bank of Am., N.A.*, 49 F.4th 121, 129 (2d Cir. 2022), *vacated and remanded on other grounds*, 602 U.S. 205 (2024); *Tantaros v. Fox News Network*, LLC, 12 F.4th 135, 140 (2d Cir. 2021); *Montefiore Med. Ctr. v.*

9

*Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011); *Drake v. Lab'y Corp. of Am. Holdings*, 458 F.3d 48, 55 (2d Cir. 2006); *Gerosa v. Savasta & Co.*, 329 F.3d 317, 320 (2d Cir. 2003); *Oglesby v. Delaware & Hudson Ry. Co.*, 180 F.3d 458, 460 (2d Cir. 1999) (per curiam); *Stephens v. Am. Int'l Ins. Co.*, 66 F.3d 41, 43 (2d Cir. 1995). Accordingly, the district court's order presents a controlling question of law warranting interlocutory review.[2]

## II. THERE IS SUBSTANTIAL GROUND FOR DISAGREEMENT WITH THE DISTRICT COURT'S RULING ON THE QUESTION PRESENTED

A substantial ground for difference of opinion exists when there are differing district court rulings within the Circuit. *See Mei Xing Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017). This Court has also acknowledged that a substantial ground for difference of opinion exists when the issue is "difficult and of first impression." *Klinghoffer*, 921 F.2d at 25. Both circumstances are present here.

There are two conflicting district court opinions: the district court's decision in this case and Judge Kaplan's decision in *Bellino*. Both decisions were issued this same year on the same issue of whether the VGMVPL is preempted by the CVA.

The issue would also be one of first impression in this Circuit, as no other

---

[2] This Court could also certify this issue to the New York Court of Appeals, as this question involves the interpretation of New York statutes and policy. *See Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, 96 F.4th 539, 546 (2d Cir.) (certifying question of whether CVA's waiting provision is a statute of limitations), *certified question accepted*, 41 N.Y.3d 969 (2024).

federal court has addressed the issue. The fact that there are only two conflicting decisions appearing to address this issue only further suggests there is substantial ground for difference of opinion. *See Klinghoffer*, 921 F.2d at 25 (certifying appeal under Section 1292(b) where the issue was difficult and of first impression).

This Court has accepted Section 1292(b) interlocutory appeals in nearly identical circumstances. The district court in *Capitol Records, LLC v. Vimeo* certified an issue for immediate appeal when the only other district court case to address the issue reached the opposite conclusion and there were no federal appellate court decisions on point. 972 F. Supp. 2d 537, 552 (S.D.N.Y. 2013) ("This issue is a question of first impression in the Second Circuit, and aside from these two decisions no other federal court appears to have addressed the issue. In view of the paucity of case law and these conflicting conclusions, the Court finds that the second statutory factor has been satisfied."). This Court accepted the interlocutory appeal. *See Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 86-87 (2d Cir. 2016).

Here, the difference between the *Bellino* decision and the district court's order is particularly acute because almost identical arguments were advanced in both actions. Like Mr. Black here, the defendant in *Bellino* also argued that the CVA preempted the VGMVPL Revival Statute. *Compare* Dist. Ct. Dkt. 41 at 16 ("But the NYC Revival Statute cannot render her claim timely, because the statute is preempted by the New York State CVA Revival Provision."), *with Bellino*, No. 24-

11

cv-0712 (LAK), ECF No. 6 at 13-14 (arguing that the CVA and ASA preempt the VGMVPL).  Judge Kaplan agreed with the defendant in *Bellino* on this very point, holding that "the limitations provision of the VGMVP[L] is preempted by the state's adoption of the Child Victims Act and Adult Survivors Act, substantially for the reasons set forth by the defendant."  *Bellino*, 2024 WL 1344075, at *1.  The district court here however, held that the VGMVPL is not preempted, finding that the CVA does not amount to "a comprehensive scheme," and listing a series of factors that it found lacking with the CVA's scheme.  MTD Or. at 10.  It is therefore impossible to reconcile the district court's order with Judge Kaplan's decision in *Bellino*.  Judge Kaplan's acceptance of the same preemption argument in *Bellino* demonstrates that courts disagree on this issue and there is substantial ground for difference of opinion.[3]

The arguments for preemption and against the district court's ruling have merit.  Preemption under New York law can arise through both conflict preemption and field preemption.  *See People v. Torres*, 37 N.Y.3d 256, 265 (2021).  Neither form of preemption requires the State to preempt local law expressly, as preemption may be implied either through the nature of the subject matter being regulated as

---

[3]  The plaintiff in *Bellino* initially filed two notices of appeal, but both appeals have now been withdrawn.  *See Bellino v. Tallarico*, 2024 WL 3170987 (2d Cir. Apr. 4, 2024); *Bellino v. Tallarico*, No. 24-01885, doc. 17 (2d Cir. Oct. 10, 2024).

well as the scope and purpose of the legislative scheme. *See Cohen v. Bd. of Appeals of Vill. of Saddle Rock*, 100 N.Y.2d 395, 400 (2003). Mr. Black argued below that the VGMVPL is preempted by the CVA under both a conflict and field preemption analysis.

Field preemption exists because, in enacting the CVA, the State Legislature definitively prescribed a specific time window for claims relating to sexual offenses against minors throughout the state of New York. *See* N.Y. C.P.L.R. § 214-g (stating that it applies to "every civil claim or cause of action brought against any party … as a result of conduct which would constitute a sexual offense" against a minor). The CVA thus provided a comprehensive and detailed regulatory scheme overhauling statutes of limitations applicable to child sexual assault and sexual abuse claims. In doing so, it indicated a purpose to occupy an entire field of regulation, thus preempting Plaintiff's claims. *See Lansdown Ent. Corp. v. New York City Dep't of Consumer Affairs*, 74 N.Y.2d 761, 765 (1989) ("Where a State Law indicates a purpose to occupy an entire field of regulation … local regulations are preempted regardless of whether their terms conflict with provisions of the State statute or only duplicate them."). This same reasoning was advanced by the defendant in *Bellino* and accepted by Judge Kaplan. *See Bellino*, 2024 WL 1344075, at *1.

The VGMVPL Revival Statute is also preempted under a conflict preemption analysis, which exists where "a state law prohibits what a local law explicitly

13

allows." *N.Y. State Assn's for Affordable Hous. v. Council of the City of N.Y.*, 141 A.D.3d 208, 215 (1st Dep't 2016) (quotations omitted). In short, the VGMVPL Revival Statute establishes a different and conflicting period for bringing claims than the CVA Revival Provision. The CVA revived these claims for a two-year window lasting from August 2019 to August 2021, N.Y. C.P.L.R. § 214-g, but the VGMVPL Revival Statute attempts to revive these same claims for a different two-year window lasting from March 2023 to March 2025, N.Y.C. Admin. Code § 10-1105.

While the district court reasoned that that there could be no conflict between the CVA and VGMVPL because "[t]hese statutes serve the same purpose," MTD Or. at 12, conflict preemption has been found where statutes directly conflict even if the statutes had the same claimed purpose, *see Lansdown*, 74 N.Y.2d at 763 ("Nevertheless, even assuming that this local ordinance was adopted for the claimed purpose, this conclusion would not alone be sufficient to surmount the preemption hurdle."); *see also Arizona v. United States*, 567 U.S. 387, 402 (2012) (holding state law was preempted despite having "same aim" as federal law); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 379 (2000) ("The conflicts are not rendered irrelevant by the State's argument that there is no real conflict between the statutes because they share the same goals…. The fact of a common end hardly neutralizes conflicting means."). As the New York Court of Appeals explained in *Lansdown*, "[e]ven where the local goal does not conflict with State legislative objectives, the

14

locality must still tailor its ordinance to ensure that its impact upon the preempted field is merely incidental." 74 N.Y.2d at 763-64. But here, the VGMVPL provides an entirely different period of time in which to bring claims than what the CVA provides, thus providing for a claim where one would not otherwise exist under the CVA. *See id*. at 764 ("[R]ather, the direct consequences of a local ordinance should be examined to ensure that it does not render illegal what is specifically allowed by State law.") (quotations omitted).

The district court also found that the "VGMVPL is consistent with the City's broad policing power to enact legislation to protect its residents" and that "[p]reventing the City from enacting its own deadline ... risks rendering that power illusory." MTD Or. at 13. But New York courts have expressly found that "the City Council may not exercise its police power to adopt a law ... which is inconsistent with a State statute." *New York City Health & Hosps. Corp. v. Council of the City of N.Y.*, 303 A.D.2d 69, 74 (1st Dep't 2003); *see Patrolmen's Benev. Ass'n of City of New York, Inc. v. City of New York*, 142 A.D.3d 53, 58 (1st Dep't 2016) (explaining that municipalities are accorded broad police powers, "provided local governments refrain from adopting laws that are inconsistent with the Constitution or state statutes"). By providing a different time period in which to bring claims, the VGMVPL Revival Statute is inconsistent with the CVA. Accordingly, there are reasoned bases to find for Defendant, establishing substantial ground for difference

of opinion.

## III. INTERLOCUTORY APPEAL WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION

Appellate review of whether the VGMVPL Revival Statue is preempted by the CVA will materially advance the ultimate termination of the litigation. Immediate appeal materially advances the ultimate termination of the litigation when reversal of the district court's order would "immediately end the litigation." *Red Bull Assocs. v. Best Western Int'l*, 862 F.2d 963, 965 n.5 (2d Cir. 1988). "The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law," because both standards are satisfied when immediate appeal "involve[s] the possibility of avoiding trial proceedings, or at least curtailing and simplifying pretrial or trial." 16 Edward H. Cooper, Federal Practice and Procedure (Wright & Miller) § 3930 (3d ed. 2024); *see also In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (recognizing that courts tend to treat the controlling question of law requirement as the same as the materially advance requirement).

For the same reasons that this appeal presents a controlling question of law, immediate appeal will also materially advance the termination of the litigation. If this Court reverses the district court's order, the litigation will immediately end. There would be no need for any further proceedings. *Cf. Koehler v. Bank of Bermuda*, 101 F.3d 863, 866 (2d Cir. 1996) (declining to hear interlocutory appeal

when remand would be required regardless of how court ruled); *Isra Fruit, Ltd. v. Agrexco Agric. Export Co.*, 804 F.2d 24, 25-26 (2d Cir. 1986) (holding appeal would not "materially advance the termination" of the suit when trial would likely occur without significant time saving even if appeal was successful).[4]

## IV. INTERLOCUTORY REVIEW IS CONSISTENT WITH THE PURPOSE OF SECTION 1292(B)

In addition to satisfying the statutory criteria, this appeal is consistent with the purpose of Section 1292(b). Resolution of the preemption issue would have precedential value for future parties litigating this same issue, who otherwise would

---

[4] If this Court permits interlocutory appeal and rules in Mr. Black's favor, the result would be dismissal of the case with prejudice, and there would be no need to consider Ms. Doe's amended complaint. In all events, the Amended Complaint—which like the original complaint, asserts only one cause of action for violation of the VGMVPL arising out of a single alleged encounter in 2002, when Ms. Doe was 16, and relies on the VGMVPL Revival Statute as the sole basis for the claim being timely—would be untimely for the same reasons as the original complaint. *See* Dist. Ct. Dkt. 152 (Am. Compl.). While the filing of an amended complaint may moot an appeal where "the operative facts changed," *Amadou v. Doyle*, 674 F. App'x 50, 52 (2d Cir. 2017), the operative facts in the Amended Complaint are the same as those in the original complaint. Further, the district court already contemplated the effect of the Amended Complaint and did not see mootness as a problem. In its order denying Mr. Black's motion to dismiss, the district court acknowledged that Plaintiff had filed a motion for leave to amend the Complaint but because Mr. Black acknowledged it had no effect on the pending motion to dismiss, the court decided the motion. *See* MTD Or. at 2 n.1; *see also Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020) (holding that "when a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint"). The district court also granted the motion to amend and the motion for Section 1292(b) certification on the same day and in the same order. *See* Certification Or.

be faced with the ambiguity created by two directly conflicting district court opinions and no appellate caselaw. *See Klinghoffer*, 921 F.2d at 24 ("[T]he impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the district court. But that is not the same as defining a 'controlling question of law' in terms of its precedential value.").

Appellate review of this issue now could prevent the filing of other potentially time-barred lawsuits, as well as resolve the current uncertainty concerning the VGMVPL. While there appear to only be two opinions discussing whether the CVA preempts the VGMVPL, this issue is likely to be recurring as the CVA's lookback period only recently expired. Indeed, the same preemption issue is currently pending before the same district court judge in another case. *See Doe v. Combs*, No. 23-cv-10628 (S.D.N.Y.), Dkt. 57 (arguing, *inter alia*, that the complaint should be dismissed because the CVA preempts the VGMVPL). Additionally, this Court has heard multiple CVA cases, including cases involving statute of limitations issues. *See Jones*, 96 F.4th at 541; *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 104 (2d Cir. 2023) (addressing whether CVA Revival Statute can revive or toll a federal claim that is otherwise time barred but is based on alleged sexual assault falling under the CVA); *see also Sutton v. Tapscott*, 2024 WL 4657123, at *1 (2d Cir. Nov. 4, 2024) (addressing CVA claim).

18

Additionally, interlocutory review would prevent unnecessary litigation and promote judicial efficiency. Section 1292(b) review is especially warranted when immediate appeal would avoid unnecessary litigation. *See McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 849 F.2d 761, 765 (2d Cir. 1988) ("Courts have noted that … section 1292(b) certification might be the most appropriate way in which to avoid unnecessary litigation in cases involving such interlocutory orders as those entered in response to motions seeking compelled arbitration."). It would be unnecessary and a waste of judicial resources for the parties here to litigate the merits of Ms. Doe's claim to the end, only to have this Court reverse the district court's threshold preemption ruling on appeal. This Court has acknowledged that a case like this—"where a long trial is envisioned to determine liability over a defense disputing the right to maintain the action"—is one of the kinds of cases that, while considering Section 1292(b), the House Committee on the Judiciary listed as appropriate for interlocutory appeal. *Koehler*, 101 F.3d at 866. Immediate appeal here would thus promote judicial efficiency, one of the purposes of Section 1292(b). *See Marisol A. by Forbes v. Giuliani*, 104 F.3d 524, 528 (2d Cir. 1996) (acknowledging judicial efficiency as one of the purposes of § 1292(b)).

Immediate review is also consistent with the very purpose of statutes of limitations; it would prevent Mr. Black from having to defend against a time-barred action. *See United States v. Kubrick*, 444 U.S. 111, 117 (1979) ("[Statutes of

limitations] protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise."); *see also Connell v. Hayden*, 83 A.D.2d 30, 41 (2d Dep't 1981) ("[T]he primary purpose of Statutes of Limitations is to relieve defendants of the necessity of … preparing a defense where the action is commenced against them after the expiration of the statutory period because the law presumes that by that time evidence has been lost, memories have faded, and witnesses have disappeared.") (quotations omitted).  The need for appellate review is therefore compelling.

## CONCLUSION

For the foregoing reasons, Defendants' petition for permission to appeal should be granted.

Dated:  November 18, 2024                    Respectfully submitted,

*/s/ Michael B. Carlinsky*

E. Danya Perry
Peter A. Gwynne
PERRY LAW
445 Park Avenue, 7th Fl.
New York, NY 10028
(212) 393-4250

Michael B. Carlinsky
Jennifer J. Barrett
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Fl.
New York, NY 10010
(212) 849-7000

Susan Estrich (*pro hac vice forthcoming*)
ESTRICH GOLDIN LLP
947 Berkeley Street
Santa Monica, CA 90403
(213) 399-2132

*Counsel for Defendant-Petitioner*

## CERTIFICATE OF COMPLIANCE

1.  This petition complies with the type-volume limitations of Fed. R. App. P. 5(c) and 32(c)(2) because it contains 5030 words, excluding the parts of the petition excluded from the length by Fed. R. App. P. 32(f).

2.  Pursuant to Fed. R. App. P. 32(c)(2), this petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in Times New Roman 14-point font.

Dated: November, 18, 2024                    Respectfully submitted,

                                             By:  */s/ Michael B. Carlinsky*
                                             Michael B. Carlinsky

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JANE DOE, | |
| Plaintiff, | |
| -against- | 23-CV-6418 (JGLC) |
| LEON BLACK, | **OPINION AND ORDER** |
| Defendant. | |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Jane Doe brings this action under the Victims of Gender-Motivated Violence Protection Law ("VGMVPL") alleging that Defendant Leon Black sexually assaulted her in 2002, when she was a minor. The truth or falsity of that allegation is not the question at this stage. Instead, the question before the Court is whether the amendment reviving claims under the VGMVPL (the "VGMVPL Revival Statute") is preempted by the Child Victims Act ("CVA"). Because Defendant has failed to demonstrate that the state legislature occupied the relevant field of legislation with the CVA or that the VGMVPL Revival Statute conflicts with the CVA, the Court finds that the VGMVPL Revival Statute is not preempted by the CVA. Accordingly, Defendant's motion to dismiss is DENIED. The Court also DENIES Defendant's motion to stay as moot, GRANTS in part and DENIES in part the parties' motions to seal, and DENIES Defendant's motion for sanctions.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff

alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[W]hen considering a preemption argument in the context of a motion to dismiss, the factual allegations relevant to preemption must be viewed in the light most favorable to the plaintiff. A district court may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015).

## DISCUSSION

The Court first denies Defendant's motion to dismiss, finding that the VGMVPL Revival Statute is not preempted by the CVA. The Court next denies Defendant's motion to stay as moot. The Court then grants in part and denies in part Defendant's motion to seal, finding that only the proposed redactions to protect Plaintiff's anonymity and her medical information are warranted. Finally, the Court denies Defendant's motion for sanctions, finding that the factual record is insufficient at this juncture to make a determination as to sanctions.

## I.     Defendant's Motion to Dismiss is Denied[1]

The New York City Council adopted the VGMVPL in 2000 in response to the Supreme Court's decision in *United States v. Morrison*, 529 U.S. 598 (2000), which struck down the Violence Against Women Act ("VAWA") on Commerce Clause grounds. N.Y.C. Admin. Code

---

[1] On August 20, 2024, Plaintiff filed a motion for leave to amend the Complaint. *See* ECF No. 91. Defendant acknowledges that the proposed amended complaint "has absolutely no effect on the pending motion to dismiss." *See* ECF No. 94. Thus, the Court decides the motion to dismiss herein; the Court will decide upon the motion for leave to amend and related sealing motions at a later date.

§ 10-1102. The VGMVPL provides for a cause of action for "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender." *Id*. § 10-1104. The VGMVPL defines "crime of violence" as:

> [A]n act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction.

*Id*. § 10-1103. The VGMVPL further defines "crime of violence motivated by gender" as a "crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." *Id*.

The VGMVPL allows for actions to be commenced within seven years after the alleged crime of violence motivated by gender. *Id*. § 10-1105(a). If a potential plaintiff is unable to bring a claim within the seven years for certain enumerated reasons, including infancy, "the time within which the action must be commenced shall be extended to nine years after the inability to commence the action ceases." *Id*. Under such limitations period, Plaintiff's claim would have expired approximately eleven years ago, as the alleged crime of violence motivated by gender occurred in 2002 when she was sixteen. *See* ECF No. 1 ("Compl.") ¶¶ 1–2.

On January 9, 2022, the New York City Council adopted an amendment to the VGMVPL – the VGMVPL Revival Statute – stating:

> Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.

3

City of New York, L.L. 21/2022 § 2. Plaintiff claims that she timely filed suit, because she

brought her action on July 24, 2023, less than two years and six months after September 1, 2022.

*See* Compl. ¶ 99.

Defendant argues that the VGMVPL Revival Statute is preempted by the CVA, and

therefore that Plaintiff's claim is untimely. ECF No. 41 ("Mot."). The CVA states:

> Notwithstanding any provision of law which imposes a period of limitation to the
> contrary . . . every civil claim or cause of action brought against any party
> alleging intentional or negligent acts or omissions by a person for physical,
> psychological, or other injury or condition suffered as a result of conduct which
> would constitute a sexual offense as defined in article one hundred thirty of the
> penal law committed against a child less than eighteen years of age . . . which is
> barred as of the effective date of this section because the applicable period of
> limitation has expired . . . is hereby revived, and action thereon may be
> commenced not earlier than six months after, and not later than two years and six
> months after the effective date of this section.

C.P.L.R. § 214-g. The CVA was first enacted on February 14, 2019, allowing actions to be

commenced between August 14, 2019 and August 14, 2020. 2019 N.Y. Sess. Laws, ch. 11 (S.

2440). In 2020, the CVA's revival window was extended until August 14, 2021. 2020 N.Y. Sess.

Laws, ch. 130 (S. 7082).

In part, the CVA revives previously barred actions related to the sexual abuse of children.

C.P.L.R. § 214-g. The Sponsor Memorandum provides that the CVA "would also establish a one-

year window in which adult survivors of child sexual abuse would be permitted to file civil

actions . . . ." Senate Introducer's Mem. in Support, Bill Jacket, L 2019, ch. 11 at 7.

**A.  The VGMVPL Revival Statute Is Not Preempted by the CVA**

The Court thus analyzes whether the VGMVPL Revival Statute is preempted by the

CVA. Under the New York State Constitution's "home rule" provision, municipalities are able to

adopt local laws pertaining to the "government, protection order, conduct, safety, health and

well-being of persons or property therein," as long as such local laws are "not inconsistent" with

the state constitution or general state laws. NY Const., art. IX, § 2(c)(10). "Local laws may be
inconsistent with and preempted by state law either because the legislature has occupied the
relevant field of regulation" – field preemption – or "because the local law conflicts with state
law" – conflict preemption. *Police Benevolent Ass'n of City of New York, Inc. v. City of New
York*, 40 N.Y.3d 417, 423 (2023).

Both parties rely on *Engelman v. Rofe*, 144 N.Y.S.3d 20 (1st Dep't 2021), to support their
arguments regarding preemption. *Engelman*, though providing useful context, is not directly
applicable. In *Engelman*, the court analyzed whether the seven-year limitation period for a claim
under the VGMVPL was preempted by C.P.L.R. § 215(3), which provides for a one-year
limitation period for assault, finding that it was not. 144 N.Y.S.3d at 23. The court held that the
"[VGMVPL's] construct is consistent with the City's broad policing power to enact legislation to
protect its residents from discrimination, including gender-related violence." *Id*. at 25 (cleaned
up). In so holding, the court found that "the legislative intent of the [VGMVPL] was to create a
civil rights remedy or cause of action such as in VAWA, rather than to extend the statute of
limitations for a particular class of assaults." *Id*. at 25–26. Here, however, the provision of the
VGMVPL at issue is specifically about the statute of limitations – extending the time for which
potential plaintiffs can bring causes of action. Therefore, this case does not resolve the issue
before the Court: whether the VGMVPL Revival Statute is preempted by the CVA by either field
or conflict preemption.

### 1.  Field Preemption Does Not Bar the VGMVPL Revival Statute

The Court next turns to analyzing the VGMVPL under field preemption. "Field
preemption prohibits a local government from legislating in a field or area of the law where the
legislature has assumed full regulatory responsibility." *Police Benevolent Ass'n*, 40 N.Y.3d at

423 (cleaned up). "Permitting such laws 'to operate in a field preempted' by the state 'would tend

to inhibit the operation of the state's general law and thereby thwart the operation of the state's

overriding policy concerns.'" *Id.* (quoting *Jancyn Mfg. Corp. v. Cnty. of Suffolk*, 71 N.Y.2d 91,

97 (1987)). However, "the mere fact that a local law may deal with some of the same matters

touched upon by state law does not render the local law invalid." *Id.* at 425 (quoting *People v.

Judiz*, 38 N.Y.2d 529, 531–32 (1976)). Instead, "[a] desire to pre-empt may be implied from a

declaration of State policy by the Legislature or from the fact that the Legislature has enacted a

comprehensive and detailed regulatory scheme in a particular area." *Consol. Edison Co. of New

York v. Town of Red Hook*, 60 N.Y.2d 99, 105 (1983) (internal citations omitted). Here,

Defendant's field preemption arguments fail for the reasons stated below.

### a. The CVA Does Not Indicate an Intent to Occupy the Field

The state has made no statements evincing a desire to fully control the issue of statutes of

limitation in child sexual offense cases.[2] Defendant points to several statements by the legislature

with respect to the CVA in an attempt to demonstrate field preemption. They are that (1) the CVA

applies to "'every civil claim . . . brought against any party . . . as a result of conduct which

would constitute a sexual offense' against a minor as defined in, among other provisions, 'article

one hundred thirty of the New York State penal law'"; (2) passage of the CVA "will finally allow

justice for past and future survivors of child sexual abuse"; (3) the CVA "will finally give . . . all

survivors of childhood sexual abuse in the state of New York the justice that they deserve"; (4)

the CVA was "on behalf of all of New York's survivors"; and (5) passing the CVA meant "finally

getting something done that helps every single victim in this state." Mot. at 17–18 (quoting

---

[2] The Court does not consider the exhibits filed at ECF No. 105, which are not part of the
legislative history of the CVA.

C.P.L.R. § 214-g; New York Bill Jacket, 2020 S.B. 7082, Ch. 130, at 8; N.Y. Senate Debate on

Senate Bill S2440, Jan. 28, 2019, at 754, 762, 773).

    None of these statements support a finding of field preemption on the matter of statutes

of limitations. Instead, they merely indicate that the legislature intended for the CVA to benefit

all New York child sexual assault victims. This is not the same as "an expression of need for

uniform State-wide control" that has been found to support field preemption. *See Vatore v.*

*Comm'r of Consumer Affs. of City of New York*, 83 N.Y.2d 645, 650 (1994). These general

statements about helping all New Yorkers are similar to statements made with respect to the New

York State Human Rights Law ("NYSHRL"). The NYSHRL states that its purpose is to "assure

that every individual within this state is afforded an equal opportunity to enjoy a full and

productive life" free from discrimination. N.Y. Exec. L. § 290(3). Nonetheless, the New York

Court of Appeals (the "Court of Appeals") found the New York City Human Rights Law, which

overlaps substantially with the NYSHRL, not to be preempted. *See New York State Club Ass'n,*

*Inc. v. City of New York*, 69 N.Y.2d 211, 217–18 (1987), *aff'd*, 487 U.S. 1 (1988).

    Cases where courts have found that the state has expressed a need for complete control in

a field are readily distinguishable. For example, in *Consolidated Edison*, the Court of Appeals

found that a state law providing that all decisions regarding where new major steam electric

generating facilities should be located were to be determined by a state siting board preempted a

local law requiring that people obtain a license from the town board to begin a site study for a

power plant. 60 N.Y.2d at 103, 105. The desire to preempt was implied from legislative

declarations of state policy that the purpose of the state law was "to provide for the expeditious

resolution of all matters concerning the location of major steam electric generating facilities

presently under the jurisdiction of multiple state and local agencies, including all matters of state

and local law, in a single proceeding" and that "there is a need for the state to control determinations regarding the proposed siting of major steam electric generating facilities within the state." *Id*. at 105. The court also found relevant that the governor approved the law as "the establishment of a unified certificating procedure." *Id*.

Likewise, the Court of Appeals found similar language in the Alcoholic Beverage Control Law ("ABC Law") to be indicative of field preemption. In *People v. De Jesus*, the court considered whether a local law about the sale and offering of alcohol after a certain time was preempted by the ABC Law. 54 N.Y.2d 465 (1981). The ABC Law declared that it was the goal of the state, through the statute, to "regulate and control the manufacture, sale and distribution within the state of alcoholic beverages." *Id*. at 470. Stating that the policy behind the legislation was not "left to the imagination" by this language, the court concluded that the local law was indeed preempted. *Id*.

Here, no similar statements were made in the context of the CVA. Instead, the statements Defendant has pointed to do not support field preemption but instead focus on the benefits the CVA would provide all child victims. The statements do not indicate a desire by the state to assume full control or regulation of this issue.

**b. The CVA Is Not a Comprehensive and Detailed Regulatory Scheme**

The CVA is not the kind of scheme – one that is "comprehensive and detailed" – that would support a finding of field preemption. *See Consol. Edison*, 60 N.Y.2d at 105. The cases Defendant cites only further this conclusion. First, in *Consolidated Edison*, the Court of Appeals found field preemption where the statute regulating the siting of new major steam electric generating facilities was "comprehensive and detailed." *Id*. There, the state law included provisions that encouraged prospective applicants to consult state agency staffs regarding

preapplication site studies, instructed applicants to request exceptions or variances from

municipal regulations, allowed the state board to waive compliance with municipal regulations,

and required information to be gathered in carefully prescribed site studies prior to filing an

application. *Id*. at 106.

Second, in *ILC Data Device Corporation v. County of Suffolk*, the Second Department

held that the state legislature intended to preclude local regulation in the field of employee safety

in the workplace with the enacting of a "comprehensive regulatory scheme." 588 N.Y.S.2d 845,

850 (2d Dep't 1992). The New York Commissioner of Labor (the "Commissioner") was given

"expansive authority to engage in inspections, investigations, and enforcement" with regard to

workplace safety and health as well as the authority to establish and maintain local branch

offices, "thereby facilitating the application of State-wide regulation by State officials at the local

level." *Id*. at 850–51. The state law provided the Commissioner with the authority to allow

variations from health and safety standards, to inspect physical premises and books and records,

and to issue subpoenas and conduct hearings. *Id*. at 851. Moreover, the state law set forth

comprehensive procedures for administrative and judicial review, governed the employment of

minors, controlled work hours and wages, and authorized the Commissioner to identify and

ameliorate dangers in machinery and equipment. *Id*. The law also regulated the adoption,

implementation, and enforcement of health and safety standards for private employees in New

York. *Id*.

Third, in *Wholesale Laundry Board of Trade, Inc. v. City of New York*, the court

concluded that the state law regarding minimum wage "indicate[d] a purpose to occupy the entire

field." 234 N.Y.S.2d 862, 865 (1st Dep't 1962), *aff'd*, 12 N.Y.2d 998 (1963). This was because

the "provisions for amendment of the wage fixed formulate an elaborate machinery for the determination of an adequate wage in any occupation and in any locality." *Id.*

And lastly, in *Lansdown Entertainment Corporation v. New York City Department of Consumer Affairs*, the Court of Appeals affirmed that the regulatory system of the ABC Law was comprehensive and detailed. 74 N.Y.2d 761, 762–63 (1989). The court cited to *De Jesus*, which explained that the ABC Law gave the State Liquor Authority the power to grant licenses under defined circumstances, provided for criminal sanctions against unauthorized purveyors of alcoholic beverages, specified when alcoholic beverages could be sold and consumed at retail venues, included a provision against disorderliness, and imposed direct controls at the local level by creating local alcoholic beverage control boards and granting certain powers to those boards. *See id.*; *De Jesus*, 54 N.Y.2d at 469.

Here, the CVA does not come close to enacting a comprehensive scheme. The details of the schemes relied upon in the cases Defendant cites do not exist in the instant matter. The state did not create a commissioner or board with investigatory or enforcement power. The state did not impose direct controls at the local level. The state did not set forth comprehensive procedures for administrative and judicial review. Simply put, there is no detailed and comprehensive scheme. *See Hertz Corp. v. City of New York*, 80 N.Y.2d 565, 569 (1992) (holding that the statutory scheme was not "so broad in scope or so detailed as to require a conclusion that all local law in the area of rental vehicle company practices is preempted" when "statutes merely proscribe discriminatory practices against renters or the imposition of additional rental fees").

Defendant claims that the CVA is comprehensive because the state did more than revive statute of limitations for child sex abuse cases. It has also extended the statute of limitations for certain criminal cases involving sex offenses against minors (N.Y. Crim. Proc. L. § 30.10(3)(f));

extended the time for which civil actions related to sexual offenses against minors could be

brought (N.Y. C.P.L.R. § 208(b)); and instructed the judiciary to promulgate rules for the timely

adjudication of revived actions brought pursuant to N.Y. C.P.L.R. § 214-g (N.Y. Judiciary L.

§ 219-d). Mot. at 18. Extending the time for certain criminal and civil cases related to sexual

offenses does not meet the bar of a comprehensive and detailed regulatory scheme. It is not "so

broad and detailed in scope as to require a determination that [the CVA] has precluded all local

regulation in the area . . . ." *Vatore*, 83 N.Y.2d at 650.

Accordingly, the VGMVPL Revival Statute is not preempted by the CVA under field

preemption.

### 2.    Conflict Preemption Does Not Bar the VGMVPL Revival Statute

The Court next turns to conflict preemption. "Under the doctrine of conflict preemption,

a local law is preempted by a state law when a right or benefit is expressly given by State law

which has then been curtailed or taken away by the local law." *Sunrise Check Cashing & Payroll*

*Servs., Inc. v. Town of Hempstead*, 933 N.Y.S.2d 388, 395 (1st Dep't 2011), *aff'd sub nom.*

*Sunrise Check Cashing v. Town of Hempstead*, 20 N.Y.3d 481 (2013) (cleaned up). "For a local

law to be invalid pursuant to the conflict preemption doctrine, the State must specifically permit

the conduct the local law prohibits or provide 'some other indication that deviation from state

law is prohibited.'" *People v. Torres*, 37 N.Y.3d 256, 268 (2021) (quoting *Garcia v. New York*

*City Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 617–18 (2018)). Conflict preemption

exists where "there is a head-on collision between" the local law and the state law. *Lansdown*, 74

N.Y.2d at 764.  However, the Court of Appeals has made clear not to read conflict preemption

principles too broadly, because doing so "carries with it the risk of rendering the power of local

governments illusory." *Ctr. for Indep. of Disabled v. Metro. Transportation Auth.*, 125 N.Y.S.3d

697, 704 (1st Dep't 2020) (citing *Garcia*, 31 N.Y.3d at 617). And the mere "fact that both the state and local laws seek to regulate the same subject matter does not in and of itself give rise to an express conflict." *Garcia*, 31 N.Y.3d at 617 (cleaned up).

Here, the VGMVPL Revival Statute does not curtail or take away a right or benefit expressly given by the state. The VGMVPL Revival Statute does not act to prevent anyone from filing a claim under the CVA. *Cf. Lansdown*, 74 N.Y.2d at 764–65 (holding that city ordinance conflicted with state law when state law allowed patrons to remain on premises consuming alcohol until 4:30 a.m. but city ordinance prohibited such).

There is also no "head-on collision" between the CVA and the VGMVPL Revival Statute because they further the same goals. They were both enacted to further civil rights causes of action. *See Vatore*, 83 N.Y.2d at 650 (finding no conflict preemption when "the local law would only further the State's policy interests"). The CVA sought to remedy the injustices to survivors of child sexual abuse by extending New York's statutes of limitations that required most survivors to file civil actions or criminal charges long before they reported or came to terms with their abuse. Senate Introducer's Mem. in Support, Bill Jacket, L 2019, ch. 11 at 7. The legislative history for the extension of the revival window states that "[e]xtending the length of the revival window would provide more time to notify New Yorkers about the new law and allow more survivors to seek the justice that was denied them by New York's formerly prohibitive civil statute of limitations." *Id*. Similarly, the VGMVPL Revival Statute "would give survivors of gender-motivated acts of violence more time to pursue civil actions by extending the statute of limitations."[3] These statutes serve the same purpose.

---

[3] New York City Council, *Creating a Two Year Look-Back Window to the Gender-Motivated Violence Act, and Extending Its Statute of Limitations*, https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=5072017&GUID=BA4C2A62-23E0-4AB2-B3A1-AC18F53C9993.

Furthermore, as *Engelman* recognized, the VGMVPL is consistent with the City's broad policing power to enact legislation to protect its residents from gender-related violence. *Engelman*, 144 N.Y.S.3d at 23. Preventing the City from enacting its own deadline to file a claim under its own law to protect its residents, risks rendering that power illusory.

Defendant relies on several cases in support of conflict preemption; none change the Court's conclusion. First, Defendant argues that *Turnpike Woods v. Town of Stony Point*, 70 N.Y.2d 735 (1987), supports his proposition that a local law is preempted by a state law when the local law attempts to extend or alter a limitation that the state has fixed. *See* Mot. at 14–15. However, that case dealt with supersession, not preemption, and therefore is not on point.

Second, Defendant cites to an out-of-state case that does not analyze New York law so is not applicable here. *See id*. at 15 (citing *Lafayette Trees v. City of Lafayette*, 32 Cal. App. 5th 148, 162 (Cal. Ct. App. 2019)).

And lastly, Defendant cites *Bellino v. Tallarico*, No. 24-CV-712. The Court acknowledges that a different result was reached in that case. There, the court issued an order dismissing a case brought under the VGMVPL. In part, the court, adopting the position set forth in the defendant's brief, found that "the limitations provision of the [VGMVPL] is preempted by the state's adoption of the Child Victims Act and the Adult Survivors Act [("ASA")], substantially for the reasons set forth by the defendant." Memorandum and Order, *Bellino v. Tallarico*, No. 24-CV-712 (LAK) (S.D.N.Y. Feb. 21, 2024). The defendant in *Bellino* argued that the CVA and ASA "clearly occupy the field regarding the revival of claims derived from state penal sexual assault law," relying on *Engelman* and *Doe v. Gooding*, No. 20-CV-6569 (PAC), 2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022), for support. Brief of Defendant at 14–15, *Bellino v. Tallarico*, No. 24-CV-712 (LAK) (S.D.N.Y. Feb. 2, 2024). For the reasons stated above, this Court finds otherwise.

## II.    The Motion to Stay is Denied

Because the Court has decided on Defendant's motion to dismiss, Defendant's motion to stay is denied as moot.

## III.    The Motion to Seal is Granted in Part and Denied in Part

"The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Id*. (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). "[M]otions to seal documents must be 'carefully and skeptically reviewed . . . to ensure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 165 (S.D.N.Y. 2018) (quoting *Video Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994)). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

The Second Circuit has articulated a three-part test for determining whether the common law right of public access attaches. *See Lugosch*, 435 F.3d at 119–20 (2d Cir. 2006). First, a court must determine whether the documents at issue are "judicial documents" to which a presumption of access attaches. *Id*. at 119. Second, if the documents are judicial documents, a court must determine the weight of the presumption of access. *Id*. Third, a court must balance "competing considerations" against the weight of the presumption of access. *Id*. at 120.

In addition to the common law right of access, there is also a qualified First Amendment right to access judicial documents. *Id*. Under the First Amendment "experience and logic" test,

the Court must consider whether the documents "have historically been open to the press and

general public" and whether "public access plays a significant positive role in the functioning of

the particular process in question." *Id*. (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83,

92 (2d Cir. 2004)). If a First Amendment right of access applies, documents may only be sealed

"if specific, on the record findings are made demonstrating that closure is essential to preserve

higher values and is narrowly tailored to serve that interest." *Id*. (quoting *In re New York Times

Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

### A.  Competing Considerations Outweigh the Presumption of Access for Some of the Materials in Question

Defendant seeks to file his Memorandum of Law in Support of his Motion for a Stay of

Discovery (ECF Nos. 75, 77) as well as the accompanying Estrich Declaration and exhibits

thereto (ECF Nos. 76, 78) with redactions. ECF No. 73 at 1. Plaintiff seeks to file her opposition

to the motion to stay (ECF Nos. 80, 81) under seal, or alternatively, with redactions. ECF No. 79

at 2. Defendant argues that Plaintiff proposed additional redactions that Defendant does not

believe are necessary and that the only redactions that should be applied are those that protect

Plaintiff's anonymity. ECF No. 73 at 3. Plaintiff argues that not only would information

contained in these documents lead to Plaintiff's identity being revealed, but also that Defendant

seeks to make the information public in order to embarrass, disparage, and intimidate Plaintiff.

ECF No. 79 at 2.

The supporting materials in connection with a motion to stay are judicial documents. *See

Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 72 (S.D.N.Y. 2015). Thus, there is a presumption of

public access that attaches to the documents. *Id*. The documents may only be filed under seal or

with redactions if the parties are able to overcome the presumption in favor of public access. *Id*.;

*see also Lugosch*, 435 F.3d at 119–20.

Thus, the Court balances the "competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120. Established "competing considerations" include "the privacy interests of those resisting disclosure." *Id.* Courts should also consider the "nature and degree of injury" that may result from disclosure, the "reliability of the information" and "whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *Amodeo*, 71 F.3d at 1051. Parties "opposing disclosure [of a judicial document] must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). "[B]road allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Id*.

The Court agrees with the parties that "information tending to reveal [Plaintiff's] identity" should be redacted, as the privacy interest of Plaintiff outweighs the presumption of public interest. *See Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 3759161, at *1 (S.D.N.Y. Mar. 15, 2019). This includes information such as the contents of Plaintiff's tweets, which could be reverse-engineered to determine Plaintiff's identity. Although Defendant argues that the Court should not allow redactions of "information about the country of origin from which [Plaintiff] falsely claims that various members of her family emigrated," the Court finds that it is unclear at this juncture what information regarding Plaintiff's family and country of origin is true, and therefore allows this information to be redacted. *See infra* Section IV; ECF No. 83 at 2.

Accordingly, the following information related to Plaintiff's identity, including her name, her tweets, information about her family, information about her country of origin, and other information tending to reveal her identity may be properly redacted. The Court also directs that

16

the below redactions should be made in conformity with the redactions in the Sanctions

Memorandum and ECF No. 55 ("Melendez Decl."), which the Court previously ruled upon, and

which the parties, for the most part, agreed upon. *See* ECF Nos. 45, 47.

- Plaintiff's name. ECF No. 78 ¶ 24 (ECF No. 76 ¶ 24).

- Plaintiff's Twitter handle, the content and/or description of her tweets and the dates of
  her tweets. ECF No. 77 at 1 (ECF No. 75 at 1), language from tweets in the second
  bullet point; ECF No. 77 at 6 (ECF No. 75 at 6), language from tweets in the last
  paragraph; ECF No. 77 at 8 (ECF No. 75 at 8), last sentence of second full paragraph;
  ECF No. 78 ¶¶ 7, 16–20, 26–29 (ECF No. 76 ¶¶ 7, 16–20, 26–29), dates related to the
  tweets and the content and/or description of the tweets; ECF No. 78 ¶ 24 (ECF No. 76
  ¶ 24), Twitter handles; ECF No. 78 ¶ 25 (ECF No. 76 ¶ 25), date; ECF No. 78 ¶ 35
  (ECF No. 76 ¶ 35), description of Plaintiff's tweets; ECF Nos. 78-1–16 (ECF Nos.
  76-1–16).

- Information about Plaintiff's family. ECF No. 77 at 7 (ECF No. 75 at 7), after
  "Plaintiff's" to "stated" in the last line; ECF No. 78 ¶ 14 (ECF No. 76 ¶ 14), after
  "Plaintiff's" to "stated."

- Information regarding Plaintiff's country of origin. ECF No. 77 at 7 (ECF No. 75 at
  7), first full paragraph; ECF No. 78 Section III Heading (ECF No. 76 Section III
  Heading), the proposed redaction; ECF No. 78 ¶ 15 (ECF No. 76 ¶ 15), bullet points;
  ECF No. 78 ¶ 16 (ECF No. 76 ¶ 16), after the redacted date to "Ms."; ECF No. 78
  ¶ 18 (ECF No. 76 ¶ 18), remainder of sentence following "by her own admission";
  ECF No. 78 ¶ 21 (ECF No. 76 ¶ 21); ECF No. 78 ¶ 22 (ECF No. 76 ¶ 22); ECF No.
  80 at 6–7 (ECF No. 81 at 6–7), references to family members and bullet points in full.

- Other information tending to reveal Plaintiff's identity. ECF No. 78 ¶ 18 (ECF No. 76
  ¶ 18), after "was" to "that" in the second line; ECF No. 78 ¶ 20 (ECF No. 76 ¶ 20),
  after "received" to "messages"; ECF No. 80 at 7 (ECF No. 81 at 7), quoted language
  in the last line of the first paragraph.

Requests to redact information regarding Plaintiff's medical records, treatment, and

diagnosis are also approved. *See Valentini v. Grp. Health Inc.*, No. 20-CV-9526 (JPC), 2020 WL

7646892, at *2 (S.D.N.Y. Dec. 23, 2020) (noting individuals generally "maintain[] significant

privacy rights to [their] medical information," and courts "regularly seal" such information); *see*

*also* S.D.N.Y. ECF Rule 21.4 (stating that litigants should consider redacting documents that

contain medical records, treatment, and diagnosis). Accordingly, the following information may

be properly redacted:

- ECF No. 77 at 7 (ECF No. 75 at 7), second sentence in second full paragraph;
  ECF No. 78 ¶ 11 (ECF No. 76 ¶ 11), bullet points; ECF No. 80 at 2 (ECF No. 81
  at 2), the proposed redaction; ECF No. 80 at 5–6 (ECF No. 81 at 5–6), bullet
  points; ECF No. 80 at 6 (ECF No. 81 at 6), the beginning of the third line in the
  first full paragraph to "has."

Plaintiff's remaining requests for redaction are denied. The Court will not allow

redactions of information that is already public, such as descriptions of information in public

docket entries or caselaw parentheticals. *See In re Telegraph Media Grp. Ltd.*, No. 23-MC-215

(JGLC), 2023 WL 5770115, at *6 (S.D.N.Y. Sept. 6, 2023) (denying motion to seal information

that is already a matter of public record). "Because the common law framework is dispositive" of

the motions to seal, "the Court need not undertake the First Amendment analysis." *Id.*

## IV.    The Motion for Sanctions is Denied

Defendant argues that everything the Complaint says about him is "utterly and

demonstrably false" and that Plaintiff's lawyers "failed to conduct a reasonable inquiry." ECF

No. 54 at 2. Federal Rule of Civil Procedure 11 requires an attorney filing a pleading to certify

that "to the best of the person's knowledge, information and belief, formed after an inquiry

reasonable under the circumstances . . . the factual contentions have evidentiary support or, if

specifically so identified, will likely have evidentiary support after a reasonable opportunity for

further investigation or discovery." Fed. R. Civ. P. 11(b). Rule 11 creates an "incentive to stop,

think and investigate more carefully before serving and filing papers." *Cooter & Gell v.*

*Hartmarx Corp.*, 496 U.S. 384, 398 (1990) (internal quotation marks omitted). "Rule 11

'explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a

reasonable inquiry into the viability of a pleading before it is signed.'" *AJ Energy LLC v. Woori*

*Bank*, 829 Fed. App'x 533, 535 (2d Cir. 2020) (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)).

The Court finds that because there has not yet been any discovery in this action, there is no basis from which to conclude that the facts alleged in the Complaint are false or that Plaintiff did not undertake a reasonable inquiry as a matter of law. *See Gartenbaum v. Beth Israel Med. Ctr.*, 26 F. Supp. 2d 645, 649 (S.D.N.Y. 1998) (declining to impose Rule 11 sanctions when there had been no discovery since the filing of the complaint); *see also* Decision, *Pierson v. Black*, No. 952002/2022 (N.Y. Oct. 24, 2023). Indeed, many of the cases that Defendant cites in support of issuing Rule 11 sanctions based on insufficient inquiries made surrounding the filing of a pleading were decided during a later phase of litigation. *See, e.g.*, *Jeffreys v. Rossi*, 275 F. Supp. 2d 463 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) (deciding Rule 11 motion along with summary judgment). Accordingly, Defendant's motion for sanctions is denied without prejudice.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is DENIED, Defendant's motion to stay is DENIED as moot, the parties' motions to seal are GRANTED in part and DENIED in part, and Defendant's motion for sanctions is DENIED. The parties are directed to publicly file versions of their materials related to the motion to stay (ECF Nos. 75, 76, and 81) that conform to Section III of this order no later than **October 4, 2024**.

It is hereby ORDERED that the initial pretrial conference in this matter is set for **October 29, 2024** at **12:30 p.m.** in Courtroom 11B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York. A proposed Civil Case Management Plan and Scheduling Order shall be filed by **October 22, 2024**.

The Clerk of Court is directed to terminate ECF Nos. 22, 40, 49, 73, and 74.

Dated: September 27, 2024
       New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                              Plaintiff,

                  -against-                          23-CV-6418 (JGLC)

LEON BLACK,                                          **ORDER**

                              Defendant.

JESSICA G. L. CLARKE, United States District Judge:

For the reasons stated on the record at the initial pre-trial conference ("IPTC") held before this Court on November 7, 2024, Plaintiff's motion for leave to file an amended complaint (ECF No. 91) is GRANTED, and Defendant's motion for an interlocutory appeal (ECF No. 122) is GRANTED. The parties are directed to refile the sealed documents with respect to the motion for leave to file an amended complaint with redactions consistent with the Court's Order at ECF No. 106.

The Court further directs counsel for Plaintiff to submit all Twitter messages referenced at the IPTC (i.e., direct messages wherein Plaintiff allegedly disclosed to others what occurred with Defendant Leon Black) on or before **November 12, 2024**. Defendant is permitted to submit any additional information regarding Plaintiff's alleged failure to keep her identity confidential by **November 15, 2024**. The Court takes Defendant's motion to amend the case caption to disclose Plaintiff's identity (ECF No. 116) under advisement.

The Clerk of Court is respectfully directed to terminate ECF Nos. 91, 99 and 122.

Dated: November 8, 2024                    SO ORDERED.
       New York, New York

                                           *Jessica Clarke*

                                           JESSICA G. L. CLARKE
                                           United States District Judge